IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

JEFFERY SEWELL,

    Plaintiff,

v.

BRUCE CHATMAN; WINDELL FOWLER;
LARRY BREWTON; JOHN PAUL; and
FREDDIE DAVIS,

    Defendants.

CIVIL ACTION NO.: CV614-67

## ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, who is currently incarcerated at Georgia State Prison in Reidsville, Georgia, filed a cause of action pursuant to 42 U.S.C. § 1983 to contest certain conditions of his confinement. (Doc. 1.) Defendants Bruce Chatman, John Paul, Wendell Fowler, Larry Brewton, and Freddie Davis ("Defendants") filed a Motion to Dismiss. (Doc. 46.) Plaintiff filed a Response, (doc. 56), and Defendants filed a Reply. (Doc. 60.) Plaintiff filed a Surreply. (Doc. 62.) For the reasons which follow, Defendants' Motion should be **GRANTED**. Additionally, Plaintiff should be **DENIED** leave to appeal *in forma pauperis*.

### BACKGROUND[1]

Plaintiff is a Suna Muslim and avers that his religion is a "well known" fact within Georgia State Prison. (Doc. 1, p. 6.) Plaintiff also states that certain members of the administration at Georgia State Prison labeled him a "Mob" gang member "[a]t some point in 2013." (Id.). Plaintiff asserts he informed Defendants Chatman, Fowler, Paul, and Brewton on

---

[1] The recited allegations are taken from Plaintiff's Complaint and are viewed, as they must be at this stage, in the light most favorable to Plaintiff.

several occasions that he was incorrectly labeled a member of the Mob gang, even though his religion does not allow affiliation with a gang. Plaintiff contends the Mob gang "was heavily at war with the bloods and the [C]rips. This war had led to the death of inmates and [left] many [severely] injured." (Doc. 1, p. 7.)

Plaintiff alleges that Defendant Brewton placed him in a cell with a known leader of the Crips gang on February 26, 2013. According to Plaintiff, this Crips gang member knew Plaintiff is a Muslim because Plaintiff had a kufi and a prayer rug. Plaintiff contends that he wrote Defendants Chatman, Fowler, Paul, and Brewton and spoke to them about being in fear for his life, particularly because he had been falsely labeled as a member of the "Mob" gang. Plaintiff states he feared for his life, even though Defendant Brewton told him no other inmate was aware of Plaintiff being labeled a member of the "Mob" gang. (Id.)

Plaintiff asserts he and Defendant Davis got into a physical confrontation on May 9, 2013, and after this confrontation, Defendant Davis told Plaintiff, "'I promise you, I'm going to make you pay for it.'" (Id. at p. 8.) Plaintiff asserts he and his roommate discussed this incident, but it was "no big deal" between the two of them. (Id.) Plaintiff maintains his roommate asked him about the incident with Defendant Davis about a week later. According to Plaintiff's roommate, Defendant Davis asked why Plaintiff was a coward. Plaintiff states he felt like more happened in his roommate's conversation with Defendant Davis because his roommate seemed more distant and was not talking to him. (Id.)

Approximately a week later, Plaintiff was awakened by his roommate during the early morning hours, and his roommate was holding a homemade knife to his neck. Plaintiff contends his roommate stabbed him numerous times after telling him that Defendant Davis showed him Plaintiff's file which showed Plaintiff's alleged gang affiliation. (Id. at 9.) Plaintiff contends he

was stabbed eighteen (18) times and received injuries as a result. Plaintiff avers he has constant headaches, his wounds ache during certain weather, he is forgetful at times, and he has nightmares and difficulty sleeping. (Id.) [2]

DISCUSSION

Defendants set forth several grounds for dismissal of Plaintiff's Complaint in their Motion. First, Defendants contend Plaintiff did not properly exhaust his administrative remedies regarding the claims set forth in his Complaint. Defendants also argue Plaintiff fails to set forth a viable deliberate indifference claim against them. Defendants further argue they are entitled to qualified immunity. Finally, Defendants maintain Plaintiff is not entitled to the injunctive relief he seeks. As set forth below, the undersigned agrees that Plaintiff failed to exhaust his administrative remedies properly and that Plaintiff's Complaint is due to be dismissed on this ground.

**I.   Standard of Review**

The determination of whether an inmate exhausted his available administrative remedies prior to filing a cause of action in federal court is a matter of abatement and should be raised in a motion to dismiss. Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008). "Even though a failure-to-exhaust defense is non-jurisdictional, it is like" a jurisdictional defense because such a determination "ordinarily does not deal with the merits" of a particular cause of action. Id.

---

[2] In addition to these allegations, Plaintiff asserts in his Complaint that Georgia State Prison is of "ill construction" because the transformation from one-man to two-man cells has "created unconstitutional 'death traps' for inmates." (Doc. 6, p. 6.) Plaintiff states the cells at Georgia State Prison have solid steel plates over the cell door windows, preventing inmates from being able to tell when an officer is in the dorm. Plaintiff also states there are no panic buttons in the cells. (Id.) Plaintiff's Complaint was not served on a general conditions claim. In any event, even if Plaintiff's Complaint had been so served, such a claim would be subject to dismissal based on Plaintiff's failure to exhaust his administrative remedies properly as to this claim, as set forth below.

3

(internal punctuation and citation omitted). Further, a judge "may resolve factual questions" in instances where exhaustion of administrative remedies is a defense before the court. Id.

Where Congress explicitly mandates, prisoners seeking relief for alleged constitutional violations must first exhaust inmate grievance procedures before filing suit in federal court. See Porter v. Nussle, 534 U.S. 516, 524 (2002). Section 1997e(a) of Title 42 of the United States Code states, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law . . . until such administrative remedies as are available are exhausted." In Porter, the United States Supreme Court held that exhaustion of available administrative remedies is mandatory. Porter, 534 U.S. at 523. The Supreme Court has noted exhaustion must be "proper." Woodford v. Ngo, 541 U.S. 81, 92 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90–91. In other words, an institution's requirements define what is considered exhaustion. Jones v. Bock, 549 U.S. 199, 218 (2007).

In Turner v. Burnside, 541 F.3d 1079 (11th Cir. 2008), the Eleventh Circuit clarified how the lower courts are to examine the issue of exhaustion of administrative remedies. First, the court is to take the plaintiff's version of the facts regarding exhaustion as true. Id. at 1082. If, even under the plaintiff's version of the facts, plaintiff has not exhausted, the complaint must be dismissed. Id. However, if the parties' conflicting facts leave a dispute as to whether plaintiff has exhausted, the court need not accept all of plaintiff's facts as true. Id. Rather, "the court then proceeds to make specific findings in order to resolve the disputed factual issues[.]" Id. "Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies." Id. at 1083.

4

The Eleventh Circuit has held that a district court may consider materials outside of the pleadings and resolve factual disputes regarding exhaustion in conjunction with a Rule 12(b)(6) motion to dismiss so long as the factual disputes do not decide the merits of the case. See Bryant, 530 F.3d at 1376–77.

The requirement that the exhaustion of remedies occur "first in an agency setting allows 'the agency [to] develop the necessary factual background upon which decisions should be based' and giv[es] 'the agency a chance to discover and correct its own errors.'" Green v. Sec'y for Dep't of Corr., 212 F. App'x 869, 871 (11th Cir. 2006) (quoting Alexander v. Hawk, 159 F.3d 1321, 1327 (11th Cir. 1998) (first alteration in original)). "However, 'while [Section] 1997e(a) requires that a prisoner provide as much relevant information as he reasonably can in the administrative grievance process, it does not require more.'" Id. (quoting Brown v. Sikes, 212 F.3d 1205, 1207 (11th Cir. 2000)). Nevertheless, the purpose of section 1997e(a) is not that "fact-intensive litigation" result over whether every fact relevant to the cause of action was included in the grievance. Hooks v. Rich, CV605-65, 2006 WL 565909, at *5 (S.D. Ga. Mar. 7, 2006) (internal citation omitted). "'As long as the basic purposes of exhaustion are fulfilled, there does not appear to be any reason to require a prisoner plaintiff to present fully developed legal and factual claims at the administrative level.'" Id. (quoting Irvin v. Zamora, 161 F. Supp.2d 1125, 1135 (S.D. Cal. 2001)). Rather, Section 1997e(a) is intended to force inmates to give state prison authorities a chance to correct constitutional violations in their prisons before resorting to federal suit and to prevent patently frivolous lawsuits. Id.

The Georgia Department of Corrections' grievance procedure is set forth in Standard Operating Procedure ("SOP") IIB05-0001. This SOP does not require an inmate to attempt to informally resolve his complaint before filing a formal grievance. (Doc. No. 46-3, p. 5.) An

5

inmate can file, with a few exceptions, "a grievance about any condition, policy, procedure, or action or lack thereof that affects the [inmate] personally." (Id. at p. 6.) An inmate must submit a grievance form "no later than 10 <u>calendar</u> days from the date the [inmate] knew, or should have known, of the facts giving rise to the grievance." (Id. at p. 8) (emphasis in original.) The Grievance Coordinator is to screen the grievance to determine whether the warden should accept the grievance or reject it. A grievance can be rejected if it is not timely filed, though the Grievance Coordinator "may waive the time limit for good cause." (Id.) "Good cause" is defined as: "A legitimate reason involving unusual circumstances that prevented the [inmate] from timely filing a grievance or appeal. Examples include: serious illness, being housed away from a facility covered by this procedure (such as being out on a court production order or for medical treatment)." (Id. at p. 3). The warden has a period of forty (40) calendar days from the date the inmate gave his grievance to the counselor to respond. An extension of ten (10) calendar days can be granted once, provided the inmate is advised in writing of the extension before the original 40 calendar days have expired. (Id. at p. 10.) An inmate can file an appeal with the Commissioner's Office in the following instances: if the grievance coordinator rejects his original grievance; after the warden responds to the original grievance; or when the time allowed for the warden's decision has expired. The inmate has seven (7) calendar days in which to file this appeal. (Id. at p. 12.) The Commissioner has 100 calendar days after receipt to render a decision. (Id.) These time limits may be waived for good cause. (Id.)

With these standards and procedures in mind, the Court now addresses Defendants' argument that Plaintiff did not exhaust his administrative remedies as to his claims against them.

## II. Assessment of Plaintiff's Exhaustion

Defendants assert Plaintiff filed only one (1) grievance relating to the May 2013 assault, Grievance Number 151495, which Plaintiff filed on June 6, 2013. (Doc. 46-5.) Defendants further note that this Grievance only pertained to issues occurring after the assault. Specifically, Plaintiff stated in this grievance that he was not removed from his cell promptly after the assault occurred, that he did not receive proper medical care for his injuries, and Defendant Brewton placed him in a two-man cell after his release from the infirmary. (Doc. 46-1, p. 6.) Defendants contend that Plaintiff did not complain about: Defendant Davis informing his roommate that Plaintiff was a gang member prior to the assault; Defendant Brewton deciding to house him with a Crips member in February 2013; Defendants Chatman and Fowler classifying him as a Mob member; or the Defendants failing to respond to any concerns he expressed about being housed with a gang member.

Defendants point out that Plaintiff also filed Grievance Number 173652 on April 4, 2014. In that Grievance, Plaintiff stated he "just recently found out that a false label" had been placed on him, and he wanted the label to be removed as soon as possible. (Doc. 46-7, p. 3.) Defendants maintain that, based on Plaintiff's assertion that he only learned of the "false label" in approximately April 2014, this grievance does not pertain to the classification that he complained about to Defendants Chatham and Fowler over a year earlier in February 2013. In addition, Defendants state this grievance does not address Plaintiff's assertions that Defendant Davis informed Plaintiff's roommate that Plaintiff was a Mob member, that Defendant Brewton housed him with a gang member in February 2013, or that any Defendant failed to respond to any concern Plaintiff may have expressed about his placement with a gang member. Further, Defendants note that, even if Grievance Number 173652 relates to the events giving rise to this

7

cause of action, Plaintiff did not complete the appeal process as to this grievance until July 29, 2014, which was a month after Plaintiff filed this cause of action. (Doc. 46-1, pp. 6–7.)

In response, Plaintiff asserts he did not file a grievance concerning his label as a Mob member in a timely fashion because he was stabbed 18 times and was in a state of shock.[3] (Doc. 62, p. 3.) According to Plaintiff, he experienced a "very intense mental health crisis" and "had a mental breakdown." (Id.) Plaintiff states that, once he got himself together, he had problems remembering things, and there was a lot of pressure on him. Plaintiff asserts he "just forgot" at the time from the pressure. (Id.) Plaintiff maintains he did file a grievance pertaining to the allegations made in his Complaint once he settled down and could think straight. (Id.)

To assess the parties' respective arguments, the Court reviews the documentary evident the parties submitted.

### A.  Grievance Number 151495

In Grievance Number 151495, which is dated June 6, 2013, Plaintiff asserted he was stabbed by his roommate 18 times on May 22, 2013. (Doc. 46-5, p. 5.) Plaintiff stated he was not removed from his cell for 30–40 minutes after an officer called a code. Plaintiff also stated he did not receive proper medical attention. Plaintiff further stated he was placed in a two-man cell after his release from the infirmary, even though he had told "officers" he feared for his life. (Id.) Plaintiff admits he did not file this grievance within the allotted ten (10) days' time because

---

[3] In his initial Response, Plaintiff asserts he was unable to obtain a grievance form because he was in a crisis unit and did not have access to a grievance form until after he was removed from this unit. Plaintiff contends he was not able to file his grievance in a timely manner and explained the reason why this was, yet his grievance was rejected. (Doc. 56, p. 5.) Defendants counter that they do not contend that Plaintiff's "failure to exhaust is based on the timing of the grievance filed." (Doc. 60, p. 2.) Rather, their exhaustion argument "rests on the fact that the issue raised in Plaintiff's grievance concerned a delay in removing him from his cell following the assault and the medical care he received thereafter." Id. Plaintiff attempts to answer Defendants' argument in his Surreply, doc. 62, which is the responsive pleading the undersigned has used in analyzing whether Plaintiff properly exhausted his administrative remedies.

8

he was in the infirmary and the crisis unit and could not get a grievance form when he was in those places. (Id.) This grievance was rejected as out of time on June 19, 2013, and Plaintiff received notice of this rejection on June 27, 2013. (Id. and at p. 6.) Plaintiff filed an appeal of this grievance based on this rejection the next day. (Id. at p. 4.) On appeal, Plaintiff was informed his grievance was rejected in accordance with the SOP. (Id. at p. 3.)

Even if this grievance was timely filed, it did not satisfy Plaintiff's obligation under SOP IIB05-0001. The assertions in Grievance Number 151495 do not concern the allegations contained in Plaintiff's Complaint, i.e., Plaintiff's assertions that Defendants were deliberately indifferent to his safety prior to the assault on May 22, 2013. Instead, this grievance focuses on the aftermath of this assault. Put simply, the claims raised in this Grievance and the claims asserted in this lawsuit do not match up. Consequently, Plaintiff's submission of Grievance Number 151495 cannot constitute proper exhaustion of his administrative remedies regarding the allegations contained in his Complaint.

### B. Grievance Number 173652

Likewise, the filing of Grievance Number 173652 did not satisfy Plaintiff's obligation to exhaust his administrative remedies in accordance with SOP IIB05-0001. Plaintiff filed Grievance Number 173652 on April 3, 2014. In this grievance, Plaintiff stated he "just recently found out" that he was falsely labeled as being a member of the Mob gang. (Doc. 46-7, p. 3.) Grievance Number 173652 was rejected as concerning a classification issue on June 9, 2014. (Id. at pp. 5–6.) On appeal, dated June 23, 2014, Plaintiff asserted he was not complaining about classification, but that the false gang member label placed his life in danger. (Id. at p. 4.) The appeal of Grievance Number 173652 was denied on July 29, 2014. (Id. at p. 2.)

Numerous reasons prohibit Grievance Number 173652 from constituting proper exhaustion as to the claims raised in this action. First, in this grievance, Plaintiff contended he "just recently found out" about the false label in his file. Thus, according to this grievance, Plaintiff only acquired this information at some time close to April 3, 2014. However, Plaintiff was assaulted on May 22, 2013, and the allegations in his Complaint stem from his contentions that Defendants were deliberately indifferent to his safety <u>before</u> that assault. Put specifically, if Plaintiff only learned of this "false label" in April of 2014, then he could not have complained to Defendants about this label before the assault, and Defendants, in turn, could not have ignored those complaints, before the assault.

Additionally, Plaintiff filed Grievance Number 173652 more than ten (10) months after the assault. SOP IIB05-0001 required Plaintiff to file his grievance within ten (10) days of the time that Plaintiff knew of the facts giving rise to the grievance. (Doc. No. 46-3, p. 8.) While Plaintiff's injuries from the assault and resulting treatment may have constituted "good cause" for extending the period to file a grievance, they could not excuse a delay of ten (10) months. Thus, even if Grievance Number 173652 pertained to the facts of this cause of action, it was untimely under SOP B-0001.

Lastly, this Grievance was still pending when Plaintiff filed this cause of action. Plaintiff filed an appeal of the denial of this grievance on June 23, 2014, and that appeal was not denied until July 29, 2014. Plaintiff's Complaint in this cause of action is dated June 25, 2014, and was filed in this Court on June 30, 2014. (Doc. 1.) Thus, even if Plaintiff's original filing of Grievance Number 173652 could be considered as beginning the proper exhaustion requirements under the applicable SOP, Plaintiff failed to wait until he received a response to his appeal (or to wait until the time for such a response had elapsed) prior to bringing this suit. Thus, this

grievance does not satisfy the requirement that he properly exhaust his administrative remedies prior to the filing of a Section 1983 action in federal court.

## C. Grievance Number 171295

Finally, Plaintiff also filed Grievance Number 171295 on April 3, 2014, and complained about the lack of panic buttons in the cells, steel plating over the cell door windows, which prevents communication, and inadequate security measures. Plaintiff asserted these conditions were the cause of him being stabbed 18 times. (Doc. 46-6, p. 5.)

As with Grievance Number 173652, this grievance was still pending when Plaintiff filed this cause of action. This grievance was denied on July 21, 2014, and Plaintiff's appeal of this denial was denied on September 17, 2014. (Id. at pp. 2–4.)[4] Furthermore, Plaintiff did not file this grievance until well after the time period for doing so expired. While SOP IIB05-0001 required Plaintiff to file his grievance within ten (10) days of the time that Plaintiff knew of the facts giving rise to the grievance, he did not file the grievance until 316 days after his assault. Thus, this grievance also cannot constitute the proper exhaustion of administrative remedies.

In sum, Plaintiff failed to exhaust his administrative remedies concerning the allegations forming the basis of his cause of action before he filed his Complaint with this Court. Plaintiff argues that he could not file his grievances concerning the contentions set forth in this cause of action before he did so because of his mental health. However, the evidence before the Court belies this contention. Plaintiff was able to file Grievance Number 151495relatively close in time to the assault of May 22, 2013. However, in this grievance, he only complained of events

---

[4] The Court notes a ten (10) day extension was placed on this grievance, which would have made May 23, 2014, the date for response. (Id. at p. 8.) However, Plaintiff did not receive a response to this grievance until July 21, 2014. Per SOP IIB05-001, Plaintiff could have filed an appeal before he received this response, as the warden's time for response had already elapsed, even with the extension of time. Plaintiff did not do so. Additionally, Plaintiff was aware of his assault in May 2013, well before he filed Grievance Number 171295. Plaintiff did not receive a response to his appeal until September 17, 2014, which was more than two months after his Complaint was filed in this Court.

which allegedly occurred after the assault, and his Complaint concerns events allegedly occurring before the assault. Further, Plaintiff failed to state in Grievances Numbered 171295 and 173652 that those grievances were being filed out of time based on any mental health issues Plaintiff may have been experiencing in the almost one year that elapsed between the assault and the filing of those two (2) grievances.

For these reasons, this portion of Defendants' Motion to Dismiss should be **GRANTED**, and Plaintiff's Complaint should be **DISMISSED**. As a result, it is unnecessary to address the remaining portions of Defendants' Motion.

### III. Leave to Appeal *In Forma Pauperis*

The Court should also deny Plaintiff leave to appeal *in forma pauperis*.[5] Though Plaintiff has, of course, not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal. An appeal cannot be taken *in forma pauperis* if the trial court certifies, either before or after the notice of appeal is filed, that the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3). Good faith in this context must be judged by an objective standard. Busch v. Cnty. of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). Stated another way, an *in forma pauperis* action is frivolous and, thus, not brought in good faith, if it is "without arguable merit either in law or fact." Napier v. Preslicka, 314 F.3d 528, 531

---

[5] A Certificate of Appealability ("COA") is not required to file an appeal in a Section 1983 action. See FED. R. APP. P. 3 & 4; Morefield v. Smith, No. 607CV010, 2007 WL 1893677, at *1 (S.D. Ga. July 2, 2007) (citing Mathis v. Smith, No. 05-13123-A (11th Cir. Aug. 29, 2005) (unpublished)).

(11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis of Defendants' Motion to Dismiss, Plaintiff's potential *in forma pauperis* status on appeal should be **DENIED**, as there are no non-frivolous issues to raise on appeal, and any appeal would not be taken in good faith.

CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that Defendants' Motion to Dismiss, (doc. 46), be **GRANTED** and that Plaintiff be **DENIED** leave to appeal *in forma pauperis*. Plaintiff's Complaint, (doc. 1), should be **DISMISSED**, without prejudice, based on his failure to exhaust his administrative remedies, and this case should be **CLOSED**.

Any party seeking to object to this Report and Recommendation is **ORDERED** to file specific written objections within fourteen (14) days of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the Complaint must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. The

Clerk of Court is **DIRECTED** to serve a copy of this Report and Recommendation upon the Petitioner.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 14th day of April, 2015.

_____
R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA